**In the Matter of Grand Jury Subpoena Cass CHINSKE.**

**No. MCR 91–43–M–CCL.**

United States District Court,
D. Montana,
Missoula Division.

Nov. 18, 1991.

---

.

William Boggs, Missoula, Mont., for petitioner.

Bernard Hubley, Asst. U.S. Atty., Helena, Mont., for respondent.

## OPINION AND ORDER

LOVELL, District Judge.

This matter came on for hearing on Monday, November 18, 1991, on Petitioner Cass Chinske's motion to quash a grand jury subpoena.[1] Petitioner was represented by William Boggs and the United States was represented by Bernard Hubley. After reviewing the oral and written arguments of the parties, the court is now prepared to rule.

### JURISDICTION

■ The court has limited supervisory power over grand jury proceedings, includ-

---

1. The order setting this hearing was inadvertently captioned "United States v. Cass Chinske," which led to some confusion during the hearing, since the miscellaneous criminal number assigned to this case is coincidentally the same as the criminal number of the case in which Mr. Chinske appeared as a defendant. This order bears the correct caption and the miscellaneous criminal number properly assigned to this case by the deputy clerk in charge of the Missoula office.

ing the power to quash a grand jury subpoena. However, the court must exercise its power to quash a grand jury subpoena with great caution "[b]ecause the constitutional doctrine of separation of powers mandates judicial respect for the independence both of the grand jury, and of the prosecutor." *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391 (9th Cir. 1983).

## DISCUSSION

■ Because Mr. Chinske is seeking to quash a grand jury subpoena, he has the burden of demonstrating that "there is a clear basis in fact and law for doing so." *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.1977).

### I. First Claim—Abuse of Grand Jury Subpoena Authority.

Mr. Chinske's argument that the government is on a "fishing expedition" relies on his speculations of what the government has not done. Mr. Chinske contends that the government has not shown that it is considering indicting anyone in connection with Mr. Chinske's offense, has information before it relating to that offense, or is investigating the matter. Mr. Chinske also argues that the government, having admitted that the investigation has focused on a person believed to be the exclusive distributor of the marijuana grown by Mr. Chinske, is impermissibly seeking his testimony solely for use at trial. Finally, Mr. Chinske contends that the court must review *in camera* the evidence which the prosecutor intends to present to the grand jury, in order to determine whether the subpoena of Mr. Chinske's testimony constitutes an abuse of the grand jury process.[2]

The government responded to Mr. Chinske's allegations of improper conduct by stating on the record that an investigation by state and federal law enforcement authorities has led to an individual believed to be the exclusive distributor of the mari-

juana grown by Mr. Chinske, and that Mr. Chinske has been subpoenaed to appear and give testimony in a grand jury investigation of this individual. The prosecutor also denied that he was seeking Mr. Chinske's testimony merely for use at trial.

### A. Charge of using subpoena for improper purpose.

■ The court will not use its supervisory power over the grand jury on a routine basis to require the government to prove that the testimony it seeks from a particular witness is relevant to an ongoing investigation and is not sought for an improper purpose. *In re Hergenroeder*, 555 F.2d 686 (9th Cir.1977). Where the party seeking to quash the subpoena charges harassment or other improper purpose, as Mr. Chinske has done here, the government need only refute those charges to the extent the witness has supplied evidence to support them. *In re Grand Jury Proceedings (Garcia–Rosell)*, 889 F.2d 220, 223 (9th Cir.1989).

■ Because Mr. Chinske presented nothing beyond his conclusory and speculative allegations in support of his argument that the prosecutor was attempting to harass him, the government sufficiently refuted his charges by describing the grand jury investigation in general terms. *See In re Seiffert*, 446 F.Supp. 1153, 1155 n. 5 (N.D.N.Y.1978) (holding that the government need only provide information about an ongoing investigation in general terms).

### B. Charge of using subpoena to gather trial testimony.

■ Although the grand jury should not be used "to gather evidence to prepare for trial on an already pending indictment," *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985*, 767 F.2d 26, 30 (2d Cir.1985), there is no evidence that the government has already indicted the individual suspected of buying marijuana from Mr. Chinske. Therefore, Mr. Chinske's ar-

---

**2.** In support of this argument, Mr. Boggs cites *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005 (4th Cir.1982), without informing the court that *Harvey* and *In re Grand Jury Proceed-* ings (Schofield), 486 F.2d 85 (3rd Cir.1973), the case on which it rests, have both been disapproved by the Ninth Circuit Court. *In re Osterhoudt*, 722 F.2d 591, 594 n. 1 (9th Cir.1983).

gument that the grand jury is improperly seeking trial testimony also fails.

C. Request for in camera inspection of government evidence.

Mr. Chinske has come forward with no evidence in support of his contention that the issuance of a subpoena in this matter constitutes an abuse of the grand jury process. In light of Mr. Chinske's failure to present any evidence in support of his allegations, and the prosecutor's statements as to the proper purpose for which he seeks Mr. Chinske's testimony, the court sees no need to examine the evidence which the prosecutor intends to present to the grand jury. To do so would be to unduly interfere with the independence of the grand jury and the prosecutor.

## II. Second Claim—Infringement on First Amendment Rights.

Mr. Chinske, who has pleaded guilty to the charge of maintaining a building for the purpose of manufacturing a controlled substance and has admitted selling that controlled substance to one distributor, has been subpoenaed by the grand jury. The government admits that it intends to seek testimony from Mr. Chinske concerning the identity of the buyer of his marijuana. Mr. Chinske claims that his reluctance to name his buyer is grounded in his sincerely held moral and religious beliefs, and that the government is interfering with his free exercise of those beliefs by compelling him to testify before the grand jury. According to Mr. Chinske, the subpoena should be quashed unless the government can demonstrate a compelling need for his testimony.

█ Although the court agrees with Mr. Chinske that "[g]rand juries must operate within the limits of the First Amendment," *Branzburg v. Hayes*, 408 U.S. 665, 708, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972), the court does not agree that the government is required to demonstrate a compelling interest in Mr. Chinske's subpoenaed testimony. Therefore, the government will not be required to make such a showing, although it is possible that the government would be able to do so in this case.

In his initial brief, Mr. Chinske called upon the court to apply what his counsel terms "the balancing test familiar in First Amendment cases," without citing *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the case in which that test was first applied, and without informing the court of the recent limitations placed on the *Sherbert* test by the Supreme Court in *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). At the hearing in this matter, counsel for Mr. Chinske attempted to distinguish *Smith* from the instant case by claiming that the compulsion to testify before the grand jury is not a law of general application prohibiting certain conduct.

Counsel clearly does not appreciate the scope of the Supreme Court's recent rulings concerning free exercise claims. In *Smith*, the court attempted to place its recent rulings in historical perspective and noted that "in recent years" the Supreme Court has refused to extend the *Sherbert* test to cases outside the unemployment compensation field. *Smith*, at 882, 110 S.Ct. at 1602, 108 L.Ed.2d at 888.[3]

*Smith* clearly does not apply only to cases where the law in question prohibits certain conduct, since the court considered tax collection cases in reaching its decision. *Id.* at 877, 110 S.Ct. at 1599, 108 L.Ed.2d at 885. The laws of this land compel all persons to pay the taxes assessed by various governmental bodies, regardless of their religious convictions, and the amount of those taxes is usually dependent on the

---

**3.** To show that his First Amendment free exercise rights were being infringed under the *Sherbert* test, Mr. Chinske would only have to show that the government, by requiring Mr. Chinske to testify about the buyer of his marijuana, is interfering with his sincere religious beliefs. It is difficult for me to understand a religious philosophy which allows Mr. Chinske to grow and sell marijuana in contravention of the law and prevents him from obeying the law by testifying before the grand jury as to the identity of his buyer. However, my decision that the *Sherbert* test is not controlling makes it unnecessary for the court to determine the sincerity of Mr. Chinske's religious beliefs.

amount of property or income possessed by the individual. In much the same way, the laws of this land compel all persons to testify before the grand jury when subpoenaed to do so, and whether a subpoena issues is dependant on the amount of knowledge possessed by the individual.[4]

 After a careful examination of *Smith, Sherbert,* and other recent cases involving free exercise of religion claims, the court has determined that the proper test to apply in determining this matter is that set forth in *Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Therefore, the first step in determining whether Mr. Chinske has raised a valid First Amendment claim is to determine whether prohibiting Mr. Chinske's free exercise of his religious beliefs is the object of the grand jury subpoena in this case or "merely the incidental effect of a generally applicable and otherwise valid" governmental action. *Id.* at 877, 110 S.Ct. at 1599, 108 L.Ed.2d at 885. Mr. Chinske does not dispute the government's contention that the grand jury's right to subpoena testimony is based on valid and generally applicable statutes.

As Justice Scalia stated, writing for the majority in *Smith:* "To make an individual's obligations to obey [a valid and generally applicable] law contingent upon the law's coincidence with his religious beliefs, except where the state's interest is 'compelling'—permitting him, by virtue of his beliefs, 'to become a law unto himself'—contradicts both constitutional tradition and common sense." *Id.* at 885, 110 S.Ct. at 1603, 108 L.Ed.2d at 890 (citation omitted). Mr. Chinske is not a law unto himself, and his First Amendment claim is without merit.

### III. Third Claim—Cruel and Unusual Punishment.

Mr. Chinske withdrew this claim at the hearing, admitting that it is not ripe for decision. The court agrees that any determination of these issues requires specula-

tion that Mr. Chinske will refuse to testify and will be incarcerated, and the court will not engage in such speculation.

In accordance with the foregoing,

IT IS HEREBY ORDERED that Mr. Chinske's motion to quash the grand jury subpoena is DENIED.

---

4. The federal grand jury has the right and duty to procure every person's evidence. *United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–70, 35 L.Ed.2d 67 (1973).