**UNITED STATES of America,**

v.

**Alan RAPHAEL, Defendant.**

**No. S2 90 Cr. 450 (RWS).**

United States District Court, S.D. New York.

March 5, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven M. Witzel, Andrew E. Tomback, Asst. U.S. Attys., of counsel), New York City, for U.S.

Weil, Gotshal & Manges (John R. Wing, Diane B. de Forest, of counsel), New York City, for defendant.

OPINION

SWEET, District Judge.

Defendant Alan Raphael ("Raphael") has moved to dismiss the second superseding indictment (the "Indictment") filed against him on grounds that it is barred by the Fifth Amendment's Double Jeopardy clause and that the Government has used the Grand Jury improperly. In the alternative, Raphael seeks an order limiting the Government's use of evidence obtained in recent Grand Jury proceedings and an order quashing subpoenas issued to defense witnesses. Raphael also has moved for an order directing the Government to provide him with discovery and a bill of particulars.

For the reasons set forth below, Raphael's motion to dismiss the Indictment on double jeopardy grounds is denied. The motion based on the Grand Jury proceedings is granted in part, and the Government ordered to deliver the materials at issue to the Court for an *in camera* inspection for further resolution of the motion.

*Prior Proceedings and Facts*

A complete recitation of the pertinent facts and prior proceedings is set forth in the prior opinions in this matter, familiarity with which is presumed. *See United States v. Alegria*, S 90 Cr. 450, 1991 WL 238223 (S.D.N.Y. Nov. 6, 1991); *United States v. Alegria*, 761 F.Supp. 308 (S.D.N.Y.1991). Only a brief summary is provided here.

Raphael was originally named as a defendant along with a number of other persons in an indictment unsealed on November 14, 1990. He and the others were generally charged with altering vehicle identification numbers ("VINs"), possessing vehicles with altered VINs, transporting stolen vehicles, and conspiring to commit these offenses.

The Grand Jury returned a superseding indictment on February 27, 1991. In it, Raphael was specifically charged in six counts with: (1) conspiracy (Count 1); (2) altering a VIN number (Count 4); (3) unlawfully possessing a vehicle with an altered VIN (Count 10); (4) mail fraud (Count 16); and (5) wire fraud (Counts 17 and 18). The mail fraud count and the second wire fraud count were also listed as overt acts to the conspiracy (Overt Acts 7, 12).

The first trial ended in a mistrial on May 13, 1991, because the Government failed to disclose certain information to the defense. A second trial was commenced on May 15, 1991. After the close of evidence, the two VIN counts (Counts 4 and 10) were dismissed, *see* Trial Transcript 2736, and the remaining counts sent to the jury.

The jury returned guilty verdicts on all four counts. Raphael then moved for an acquittal or new trial. His motion was granted on November 6, 1991. The first count was dismissed for the Government's failure to prove Raphael's participation in the conspiracy charged in the first superseding indictment. A new trial was ordered for the remaining mail and wire fraud counts.

On Christmas Eve, December 24, 1991, the Government served a Grand Jury subpoena returnable January 2, 1992, on one of Raphael's defense witnesses, Michael Petrone ("Petrone"). The subpoena stated that it was issued in connection to an investigation of violations of the false statement and wire fraud statutes, *see* 18 U.S.C. §§ 1001, 1343, although the Government informed Raphael's counsel that it was actually related to an investigation of a possible obstruction of justice.

Petrone appeared before the Grand Jury on January 7. Soon after he began to testify, the Grand Jury left to file another superseding indictment, i.e. the current Indictment, against Raphael. The Government states that the Indictment actually had been voted on beforehand. Letter in Response 3 (Feb. 5, 1992). The Grand Jury returned, and Petrone's testimony continued.

Three days later, two other defense witnesses were served with subpoenas. These subpoenas stated that they were in regard to suspected violations of the obstruction of justice and false statement statutes. *See* 18 U.S.C. §§ 1001, 1503. They are currently adjourned pending resolution of the present motion.

This motion was filed on January 28, 1992. Oral argument was heard on February 6, 1992, and the motion considered submitted as of that date.

*Discussion*

I. Double Jeopardy

In an admittedly unusual argument, Raphael contends that he has already been placed in jeopardy for the conduct alleged in the Indictment and that it should be dismissed under the "same conduct" test set forth in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

In *Grady*, the Supreme Court significantly expanded the protection provided by the

Fifth Amendment's Double Jeopardy Clause.[1] There, the Court held that. "a subsequent prosecution must do more than merely survive the *Blockburger* [*v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] test. As ... suggested in [*Illinois v.*] *Vitale*, [447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)] the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 521, 110 S.Ct. at 2093. This is not an evidentiary bar, but one based upon conduct. *Id.; see also United States v. Calderone*, 917 F.2d 717, 725 (2d Cir.1990) (Newman, J., concurring) (*Grady* bars second prosecution whenever defendant at risk that entirety of an offense element in pending prosecution might be established by conduct constituting entirety of distinct component of previously prosecuted offense), *cert. filed*, 60 U.S.L.W. 3014 (1991).

In *Calderone*, the Second Circuit applied *Grady* to bar the subsequent conspiracy prosecution of defendants who were acquitted of prior conspiracy charges. The defendants were originally indicted with 27 other persons on charges of participating in an allegedly wide-ranging drug conspiracy. At the close of the first case, the trial court granted the defendants' Rule 29 motions, acquitted them, and dismissed the charges against them for insufficient evidence. The Government then filed a new indictment against the defendants in an attempt "to modify the charging instrument so as to charge the separate [sub-]conspiracy" in which the defendants allegedly participated. 917 F.2d at 719.

█ The new indictment substantially overlapped the original one, even though it alleged a more intimate conspiracy and a number of new substantive counts. The Government argued that the underlying

conspiracy agreements were different, and the subsequent prosecution thus not barred. The Court of Appeals rejected this contention, finding that the same conduct would be proven in both instances as conspiracy is often proven by the conduct that gives rise to the conspiracy. *Id.* at 721–22. Moreover, the Court barred the prosecution of the substantive counts, holding that the defendants already were prosecuted for the conduct that supported those offenses. *Id.* at 721; *see also United States v. Gambino*, 920 F.2d 1108, 1109 (2d Cir.1990) (overt acts for which defendant already prosecuted may not remain in conspiracy indictment), *cert. denied*, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); *United States v. Russo*, 906 F.2d 77, 78 (2d Cir.1990) (per curiam) (later prosecution of predicate act alleged in RICO indictment of which defendant acquitted remanded for entering of *nolle prosequi*).

Although these principles undoubtedly seem appealing to Raphael, there is a primary distinction between the above cases and the present situation that renders them inapplicable. In each of those cases, the defendant was fully acquitted of the charges in the first indictment and the Government later chose to reindict the defendant on different charges based on the same conduct. The latter indictments initiated separate proceedings against the defendants.

Here, *Grady* would obviously bar the Government's prosecution of Raphael for the charges in the Indictment were this a subsequent *prosecution*. It is not. Instead, the upcoming trial is just another stage in this prosecution. The last trial ended in the acquittal of Raphael on the conspiracy count and an order for a new trial on the three fraud counts, at Raphael's behest. The superseding indictment on the fraud charges, although styled differently, does not subject Raphael to double jeopardy.[2] *See, e.g., United States v. Son-*

---

1. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

2. The significant differences between the two indictments are the deletion of any reference to

VIN numbers and the addition of a description of the car in question in the latter indictment.

*nenschein,* 565 F.2d 235, 236 (2d Cir.1977) (per curiam); *United States v. Guariglia,* 757 F.Supp. 259, 265 n. 1 (S.D.N.Y.1991). Therefore, double jeopardy can only bar the prosecution of the fraud counts if they represent multiple punishment for the same conduct, which they do not. *See Grady,* 495 U.S. at 515–18, 110 S.Ct. at 2090–91; *Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946); *In re Nofziger,* 925 F.2d 428, 435 (D.C.Cir.1991); *Guariglia,* 757 F.Supp. at 265.

## II. The Grand Jury

Raphael contends that the Government's recent use of the Grand Jury is improper and that the pending subpoenas should be quashed and the Indictment dismissed. The Government replies that it has done nothing unpropitious.

■ It is well-settled that "[i]t is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *United States v. Dardi,* 330 F.2d 316, 336 (2d Cir.), *cert. denied,* 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964); *see In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels),* 767 F.2d 26, 29 (2d Cir.1985) [hereinafter. *Simels* ]. As simple as the rule is to state, it is as difficult to prove. *See id.* at 30; *see also In re Grand Jury Proceedings (Fernandez Diamante),* 814 F.2d 61, 70–71 (1st Cir.1987) [hereinafter *Fernandez Diamante*]; *United States v. Doe,* 455 F.2d 1270, 1274 (1st Cir.1972); 8 James Moore, *Moore's Federal Practice* ¶ 6.04[5] (2d ed. 1991). The individual circumstances of a case often determine the kind of showing that a party must make to invoke the rule's protection. *See Fernandez Diamante,* 814 F.2d at 71; *United States v. Kovaleski,* 406 F.Supp. 267, 270 (E.D.Mich.1976). Yet absent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper. *See In re Grand Jury Subpoena Duces Tecum Dated May 9,* *1990,* 741 F.Supp. 1059, 1061 (S.D.N.Y. 1990).

In *Simels,* the Second Circuit ordered that a Grand Jury subpoena served upon the defendant's counsel be quashed as its timing showed that its dominating purpose was trial preparation. The subpoena in question followed a trial subpoena that was met with much resistance by the defendant and the criminal defense bar. The Government argued that the subpoena might shed light on a continuing conspiracy investigation. The court rejected this contention, noting that no witnesses had been called before the Grand Jury in the three months between the issuance of the trial subpoena and the Grand Jury subpoena. The Government had admitted that the trial subpoena was issued for evidentiary purposes, and the Court of Appeals could see nothing in the record that would modify that underlying purpose. It therefore held that the subpoena should be quashed as an abuse of Grand Jury process. *Id.* at 30.

The *Kovaleski* court, in finding fault with the Government's use of the Grand Jury there, noted that the timing of the subpoena in question was "unusual." 406 F.Supp. at 270. The first trial against the defendant ended in a mistrial. Two months later, before the start of a second trial, an unindicted co-conspirator who did not testify at the first trial was called before a Grand Jury by the same prosecutor who tried the first trial and would be trying the second. The Government contended that the co-conspirator was called to aid in a perjury investigation against the defendant. The co-conspirator apparently was the only witness called before the Grand Jury in connection with the alleged perjury.

The court reviewed the Grand Jury transcripts *in camera* and inferred that one purpose of questioning the co-conspirator was trial preparation. There were other possible purposes for the Grand Jury proceedings. Given the circumstances though, the court placed the burden of proving that the dominating purpose was proper on the Government, a burden it was unable to meet. The court therefore prohibited the Government from calling the co-conspirator

as a witness at trial and from impeaching him with his Grand Jury testimony if the defense called him. *Id.* at 271; *see also United States v. Finazzo*, 407 F.Supp. 1127, 1131–32 (E.D.Mich.1975) (ordering Government to submit affidavit and transcripts for *in camera* examination to investigate possible use of Grand Jury for pretrial discovery); *In re National Window Glass Workers*, 287 F. 219, 226–28 (N.D.Ohio 1922) (prohibiting Government from conducting Grand Jury investigation in one district to prepare for impending trial in another district).

The above cases are exceptional, however, and the Government asserts that the behavior at issue in them is not present here. It argues that it is conducting a legitimate investigation, and not using the Grand Jury to prepare for trial.

"The timing of the subpoena casts significant light on its purposes," *Simels*, 767 F.2d at 29, and here that light raises a significant question. First, the subpoenas were served after the Government's second attempt to convict Raphael and before its third. Second, the Government cannot argue with a straight face that there was nothing out of the ordinary in serving a subpoena on Christmas Eve returnable the day after New Year's Day. Third, more than six months had passed since the original jury verdict, and more than one month since Raphael's Rule 29 motion was granted, before the subpoenas were served.

Additionally, the following all shed an unflattering light on the Government's actions: Petrone and the Colons were defense witnesses for Raphael at the second trial, and presumably will be at the third; the Indictment was voted on before Petrone testified or the Colons were served; and the defense has gravely charged that one of the AUSA's represented to defense counsel that a purpose of the current proceedings is to bolster the credibility of Sena.[3] Finally, the same prosecutors have or will conduct all three trials and are responsible for the Grand Jury subpoenas at issue.

The Government contends that the Grand Jury is investigating a possible perjury or obstruction of justice committed in relation to testimony given at the second trial concerning the location of Petrone's car on August 31, 1989, as well as other matters it is unwilling to share with opposing counsel. In the Government's own words, though, the issue over Petrone's car is at best "discrete."

As the record here demonstrates, the Government's conduct during these proceedings has from time to time raised serious questions. On its face, the service of Grand Jury subpoenas on three defense witnesses after indictment while preparing for a third attempt at trying the defendant again appears questionable. However, the Grand Jury does indeed paint with a broad brush, *see United States v. R. Enterprises Inc.*, — U.S. ——, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991), and a court should hesitate before interfering with its activities.

■ Therefore, the Government is hereby ordered to turn over all of the Grand Jury transcripts at issue to the Court for an *in camera* examination. The transcripts should include not only Petrone's testimony, but also any other testimony or evidence received since November 6, 1991, relating to the alleged obstruction of justice and perjury charges, and to any other matter which may serve to justify the present proceedings. *See Kovaleski*, 406 F.Supp. at 269. After conducting a full *in camera* review of these materials, the Court will decide whether the dominating purpose of the Grand Jury proceedings has been trial preparation and, if so, the appropriate course of action to take. *See Simels*, 767 F.2d at 30. Any outstanding subpoenas shall remain adjourned until the final resolution of this contention.

### III. The Bill of Particulars

At oral argument, the Government stated that the date it intends to prove that the

---

**3.** Sena was a key prosecution witness at the second trial. The Government denies having made this representation.

Jaguar was stolen is August 25, 1989. Transcript 23–24 (Feb. 6, 1992). It will be held to that date.

### IV. Discovery

Raphael seeks to have the Jaguar available in New York City for further inspection in preparation for trial and for possible use as a defense exhibit. It currently is in FBI custody in Florida, and the Government has offered to bring it to New York, provided that Raphael pay for all expenses associated with transporting it here. The issue is, however, not properly before the Court. *Compare* Fed.R.Crim.P. 16, 17. It therefore will not be addressed at this time.

### Conclusion

For the reasons set forth above, Raphael's motion to dismiss the Indictment on double jeopardy grounds is denied. The Government is ordered to deliver the Grand Jury materials at issue to the Court for an *in camera* inspection. Upon review of these materials, a final determination of Raphael's motion concerning the Government's abuse of the Grand Jury will be made.

It is so ordered.