**UNITED STATES of America**

v.

**Joshua MEREGILDO, et al., Defendants.**

**No. 11 Cr. 576(WHP).**

United States District Court, S.D. New York.

July 6, 2012.

---

Adam Fee, Nola Breglio Heller, Santosh Shankaran Aravind, United States Attorney Office, New York, NY, for United States of America.

Winston Lee, Winston Lee Esq., Ying Stafford, Law Offices Ying Stafford, Mitchell Joel Dinnerstein, Mitchell Dinnerstein, Esq., Russell Todd Neufeld, Russell T. Neufeld Law Office, Florian Miedel, Law Office of Florian Miedel, Cesar De Castro, Lankler & Carragher, Gary G. Becker, Gary G. Becker, L.L.C, Thomas Francis Dunn, Thomas F.X. Dunn, Lisa Scolari, Law Office of Lisa Scolari, David Andrew Gordon, David Gordon, Esq., Florian Miedel, Law Office of Florian Miedel, Edward David Wilford, Edward D. Wilford, Esq., Harvey Fishbein, Harvery Fishbein, Esq., Karloff Cylton Commissiong, Adams & Commissiong LLP, Justine Aleta Harris, Colson & Harris LLP, George Robert Goltzer, New York, NY, Elizabeth Edwards Macedonio, Elizabeth E. Macedonio, P.C., Bayside, NY, Jeffrey

G. Pittell, Attorney at Law, Great Neck, NY, for Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Defendants Joshua Meregildo, Melvin Colon, Earl Pierce, Nolbert Miranda, Lebithan Guzman, Aubrey Pemberton, Felipe Blanding, Javon Jones, Dante Barber, Nathaniel Fludd, Orfelina Brito, Kevin Pinero, Toshnelle Foster, Bernard Folks, Hassan Brito, and Enrique Brito (collectively, the "Defendants") move to quash grand jury subpoenas requiring each of them to disclose any tattoos or scars to the grand jury. For the following reasons, their joint motions are denied.

## BACKGROUND

On May 31, 2012, a grand jury in this district issued sixteen subpoenas (the "Grand Jury Subpoenas") commanding the appearance of each defendant and requiring each of them to disclose any tattoos or scars on his or her body. The Government informed Defendants' counsel that it intended to execute the Grand Jury Subpoenas by photographing each defendant outside the presence of the grand jury and later presenting the photographs to the grand jury.[1] Defendants jointly moved to quash the Grand Jury Subpoenas. This Court granted a temporary stay, fixed a briefing schedule, and set a status conference for June 5.

In advance of the June 5 conference, the Government provided additional information regarding potential "spoliation" of tattoos. On June 5, this Court ordered the immediate photographing of each Defen-

dant's arms, legs and torso, and directed that the photographs be sealed pending a resolution of this motion.

## DISCUSSION

### I. Legal Standard

"The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged." United States v. Calandra, 414 U.S. 338, 344, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citing Branzburg v. Hayes, 408 U.S. 665, 700, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). To that end, a district court's power to compel persons to appear and testify before a grand jury is "firmly established." Calandra, 414 U.S. at 345, 94 S.Ct. 613 (citing Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). However, the grand jury's subpoena power is not unlimited, and a district court may quash or modify a subpoena if compliance would be "unreasonable or oppressive." Fed.R.Crim.P. 17(c).

A grand jury is presumed to act within the legitimate scope of its authority "absent a strong showing to the contrary." United States v. R. Enterprises, Inc., 498 U.S. 292, 300, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991) (citations omitted). Accordingly, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." R. Enterprises, Inc., 498 U.S. at 301, 111 S.Ct. 722.

### II. Legitimacy of the Grand Jury Subpoenas

A grand jury's investigative power does not end when it indicts a defen-

---

1. At various conferences, counsel for Defendants' have expressed resistance to the Grand Jury Subpoenas on the ground that they require personal appearances by the Defen-

dants. This argument does not appear in Defendants' letter memorandum and is deemed abandoned.

dant. Instead, "[p]ost-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." *United States v. Jones*, 129 F.3d 718, 723 (2d Cir.1997) (internal citations omitted). Notwithstanding this broad power, it is "improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Robert M. Simels, Esq.)*, ("*Simels*") 767 F.2d 26, 29 (2d Cir. 1985); *see also United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.1964). However, "absent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper." *United States v. Ohle*, 678 F.Supp.2d 215, 233 (S.D.N.Y.2010) (quoting *United States v. Raphael*, 786 F.Supp. 355, 358 (S.D.N.Y. 1992)).

■ Defendants argue that the Grand Jury Subpoenas are procedurally irregular. Seizing on the Government's earlier offer to "avoid litigation" by substituting trial subpoenas for the Grand Jury Subpoenas, Defendants assert that the dominant purpose of the Grand Jury Subpoenas is trial preparation. This argument is not persuasive. First, immediately on the heels of its offer to substitute trial subpoenas, the Government reiterated that "the photos are relevant to several ongoing grand jury investigations." (5/31/12 Tr. at 25). That grand jury investigations are ongoing is not reasonably in question. Second, Defendants' reliance on *Simels* is misplaced. In *Simels*, the Government served post-indictment trial subpoenas commanding a defendant to produce documents that would help sustain the Government's burden of proof at trial. *Simels*, 767 F.2d at

28–29. When the defendants objected, the Government issued grand jury subpoenas seeking the identical evidence. *Simels*, 767 F.2d at 29. Given that procedural history—and the absence of any active grand jury investigation—the grand jury subpoenas were quashed. *Simels*, 767 F.2d at 29–30.

In contrast to *Simels*, the Government here has represented repeatedly that grand jury investigations into Defendants' alleged violent activity are ongoing. For example, on September 28, 2011, the Government informed this Court and Defendants that "[t]here are multiple additional acts of violence currently under investigation related to this case by the Government." (9/28/11 Tr. at 6.) On January 5, 2012, the Government reiterated that "[this] is an extremely fast-moving investigation. We had another homicide right before Christmas that is connected to this case that we are actively investigating." (1/5/12 Tr. at 10.) On January 18, 2012, the Government represented that "there are numerous additional crimes that we're looking into." (1/18/12 Tr. at 14.) On May 31, 2012, the Government stated that "there is an active grand jury investigation in this case. In fact, there are several active grand jury investigations." (5/31/12 Tr. at 24.)

In its June 4 submission, the Government described the purpose of the Grand Jury Subpoenas:

> The Government has previously advised the Court and the parties that the violent conflict involving the racketeering enterprise charged in this case has resulted in at least twelve homicides and eleven non-fatal shootings during the period beginning in or about May 2010 through April 2012. Yet the pending indictment ... includes charges related only to four homicides and five non-fatal shootings out of the 23 total homicides

and non-fatal shootings related to this ongoing gang- and drug-related conflict in the Bronx, New York. The evidence sought by the Grand Jury Subpoenas bears directly on these and other related pending investigations, and is therefore the proper subject of the grand jury's investigatory power.

(Government Letter dated Jun. 4, 2012 ("Gov't Ltr.") at 2.) The Government's dominant purpose for seeking evidence of tattoos and scars from Defendants is clear—to further its grand jury investigations.[2] Accordingly, this Court finds that issuance of the Grand Jury Subpoenas were properly issued.

### III. *Reasonableness of the Grand Jury Subpoenas*

#### A. *Seizure and Search*

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendants argue that enforcement of the Grand Jury subpoenas constitutes a search of the person under the Fourth Amendment and should not be enforced absent a showing of probable cause, or at least individualized suspicion. (Defendant's Letter dated June 11, 2012 at 9–10.) The Government responds that the Fourth Amendment is not violated "by a grand jury directive compelling production of physical characteristics that are constantly exposed to the public." (Gov't Ltr. at 4.)

 Although the scope of a grand jury's power to investigate is broad, a grand jury subpoena is not a "talisman that dissolves all constitutional protections." *United States v. Dionisio*, 410 U.S. 1, 12, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Among other limitations, a "grand jury is . . . without power to invade a legitimate privacy interest protected by the Fourth Amendment." *Calandra*, 414 U.S. at 346, 94 S.Ct. 613. However, "a subpoena to appear before a grand jury is not a 'seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome," because there is an "historically grounded obligation of every person to appear and give his evidence before the grand jury." *Dionisio*, 410 U.S. at 9–10, 93 S.Ct. 764. While a grand jury subpoena may constitute a search, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, grand jury subpoenas compelling voice exemplars, *Dionisio*, 410 U.S. at 15, 93 S.Ct. 764, handwriting samples, *United States v. Mara*, 410 U.S. 19, 21–22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), and hair samples, *In re Grand Jury Proceedings (Mills)*, 686 F.2d 135, 139 (3d Cir.1982), fall outside the ambit of Fourth Amendment protection. By contrast, grand jury subpoenas involving intrusions into the body, such as blood testing, *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), implicate the Fourth Amendment's prohibition of unreasonable searches.

 Here, the Grand Jury Subpoenas, as modified by the Government, require Defendants to permit the photographing of

---

**2.** This Court fixed a cut-off date for superseding indictments to preserve Defendants' right to a speedy trial and the best interests of the public. *See* 18 U.S.C. § 3161. This Court also invoked its authority under Federal Rule of Criminal Procedure 14 to "order separate trials of counts." Fed.R.Crim.P. 14(a). The Government acknowledged this Court's authority when it agreed that "[o]nce the cutoff passes, then we will start another case." (1/5/12 Tr. at 10.)

tattoos and scars on their arms, legs, and torsos. (6/5/12 Tr. 27–28.) Unlike a person's face, these areas of the human body are not constantly exposed to the public. *Cf. United States v. Askew*, 529 F.3d 1119, 1128 (D.C.Cir.2008) (rejecting the application of Dionisio to the unzipping of a jacket to display sweatshirt). As the Eighth Circuit observed, a contrary ruling would lead "regular visitors to public beaches and swimming pools [to] be surprised to discover that their visits have cost them the lasting loss of a reasonable expectation of privacy over very substantial portions of their bodies." *Pace v. City of Des Moines*, 201 F.3d 1050, 1054 (8th Cir.2000) (finding that a police officer's order for the removal of a defendant's shirt violated the Fourth Amendment and rejecting the contention that the defendant did not have a reasonable expectation of privacy for his upper body because he was often seen in public wearing a tank top).

The Second Circuit has also suggested that displaying one's body in this manner implicates the Fourth Amendment. In dicta, the Court of Appeals cautioned that "perhaps, . . . a demand for the display of identifying characteristics such as scars or birthmarks on parts of the body not normally exposed" may be a Fourth Amendment "search." *United States v. Doe*, 457 F.2d 895, 898 (2d Cir.1972). This Court agrees that compelling a person to display his or her arms, legs, and torso is a Fourth Amendment search.

### B. *Reasonableness of the Search*

A grand jury subpoena is not a warrant and is subject only to the reasonableness requirement of the Fourth Amendment. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (holding that the Fourth Amendment requires that disclosures sought by a subpoena be reason-

able); *see also United States v. Miller*, 425 U.S. 435, 445 n. 8, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) ("A subpoena duces tecum issued to obtain records is subject to no more stringent Fourth Amendment requirements than is the ordinary subpoena. A search warrant, in contrast, is issuable only pursuant to prior judicial approval and authorizes Government officers to seize evidence without requiring enforcement through the courts." (internal citations omitted)).

Reasonableness under the Fourth Amendment requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559, 99 S.Ct. 1861. Here, Defendants were required to display their arms, lower legs, and torsos so that they could be photographed in a private room with an attorney present. The Grand Jury Subpoenas as modified do not require a defendant to exhibit more private parts of his or her body.

As the Government represented on multiple occasions, Defendants are under investigation for gang and drug related activity—including multiple unsolved shootings and murders. The evidence sought by each of the Grand Jury Subpoenas "bears directly on these and other related pending investigations[.]" (Gov't Ltr. 2.) The scars and tattoos on each Defendant may allow the grand jury to identify a perpetrator or a victim. In the context of a grand jury investigation, this individualized suspicion is sufficient. *Cf. R. Enterprises, Inc.*, 498 U.S. at 297, 111 S.Ct. 722 ("[T]he Government cannot be

**452**

required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists."). Accordingly, this Court finds that the search is reasonable and does not constitute a Fourth Amendment violation.

*CONCLUSION*

For the foregoing reasons, the Defendants' motion to quash the Grand Jury Subpoenas is denied and the Sealing Order is vacated.

SO ORDERED.

