**UNITED STATES of America, Plaintiff,**

v.

**Mark M. JACKSON, and Robert Martinez, Jr., Defendants.**

Nos. 94–40001–01–SAC, 94–40001–02–SAC.

United States District Court,
D. Kansas.

June 7, 1994.

Thomas J. Bath, Jr., James L. Eisenbrandt, Bryan Cave, Overland Park, KS, for defendant Mark M. Jackson.

Thomas M. Bradshaw, Daniel O. Herrington, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for defendant Robert Martinez, Jr.

Tanya J. Treadway, Office of U.S. Atty., Kansas City, KS, Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for plaintiff U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several pending and outstanding matters. First, the defendants jointly move to dismiss (Dk. 75) the grand jury indictment arguing the substantive differences between the original and superseding indictments evidence that the government has abused the grand jury process. Second, the defendants jointly move to compel production (Dk. 77) of the entire transcripts of the original and second grand jury investigations leading to the original and superseding indictments. Third, the court rules on the defendants' outstanding Jencks Act request for unredacted grand jury testimony and the agent's interview notes and reports on five witnesses, James A. Leiker, Pam Dieter, Cheryl Bozarth, Beverly Rice, Teresa Markowitz and Doug Montgomery. (Dk. 47). Fourth, the defendants jointly move for leave to submit jury questionnaire. (Dk. 88). Fifth, the defendants' jointly move

for production of portions of Louis Garcia's presentence report. (Dk. 62). The court will decide the motions *seriatim.* In addition, the court will address some miscellaneous matters.

**Background**

The defendants are charged by a thirty-two count indictment for their association and conduct with Parkview Hospital (Parkview), a private, for profit psychiatric hospital in Topeka, Kansas. The defendant Mark Jackson was an administrator at Parkview, and the defendant Robert Martinez was a marketing representative with Parkview. The indictment alleges that the defendants bribed Louis Albert Garcia, an employee assistance counselor with the United States Postal Service, to refer patients to Parkview. Between approximately November of 1990 and January of 1992, the defendants paid Garcia $3,000 monthly and Garcia referred forty-three patients to Parkview.

On January 5, 1994, a grand jury indicted the defendants with conspiring to defraud the United States of the faithful services of its employee Louis Garcia, in violation of 18 U.S.C. § 371 (Count one); with bribery of Garcia in giving something of value in order to influence Garcia's official acts, in violation of 18 U.S.C. § 201(b)(1)(A) (Counts two through thirty, even-numbered counts only); with aiding and abetting Louis Garcia in supplementation of his federal salary, in violation of 18 U.S.C. § 2 and 209 (Counts three through thirty-one, odd-numbered counts only); and with obstructing and impeding a federal grand jury investigation, in violation of 18 U.S.C. § 1503 (Count thirty-two). The defendants filed a joint motion to dismiss the indictment (Dk. 28), and the defendant Jackson filed a motion to strike surplusage (Dk. 32) from the indictment. The court denied those motions in an order filed March 30, 1994. (Dk. 52). 850 F.Supp. 1481.

On May 4, 1994, a grand jury returned a superseding indictment. The prosecution on the same day sent a letter to the court and defense counsel which explained the changes made by the superseding indictment:

Substantively, the superseding indictment has changed little. In form, however, the superseding indictment has changed considerably, and will hopefully be a "streamlined" improvement.

The substantive changes are as follows: (1) Count 1 now alleges that the first conspiracy occurred between November 1990 and January 1992, rather than between November 1990 and the return of the indictment [as charged in the original indictment]; (2) Count 32 has been changed from alleging a violation of 18 U.S.C. § 1503 to alleging a conspiracy to violate section 1503, under 18 U.S.C. § 371.

The "format" changes are as follows: First, Counts 2 through 16 now set forth the 18 U.S.C. § 201(b)(1)(A) violations in a table format; previously, these counts were separately pled as the even-numbered counts. Second, Counts 17 through 31 now set forth the 18 U.S.C. § 2 and 209 violations in a table format; previously, these counts were separately pled as the odd-numbered counts. Hopefully, by eliminating unnecessary repetition, this format change will make the indictment easier for the jury to follow and less cumbersome for the Court to read aloud.

Third, grammatical changes, such as added commas, have been made throughout the indictment, and the section 2 and 209 allegations have been re-written, by adding the description "in Louis Garcia's" to the "willful receipt" language, and by changing the order of the phrases to read a bit easier. These grammatical changes in no way change the substance of the allegations.

The Magistrate Judge scheduled the filing of any motions on the superseding indictment on or before May 13, 1994, the filing of responses on or before May 23, 1994, and a hearing on those motions on May 27, 1994, at 2:00 p.m. (Dk. 69).

**Motion to Dismiss Grand Jury Indictment**

The defendants argue that a comparison of the original and superseding indictments reveals that the government abused the grand jury process by presenting evidence for the purpose of strengthening its case on the already pending indictment. Based on certain substantive changes found in the superseding indictment, the defen-

dants conclude that the evidence presented to the second grand jury was not just "incidental" to the original indictment. Based on the passage of time between the first and second grand jury proceedings, the defendants conclude that the government used the second grand jury to gather evidence on the charges found in the original indictment.

The prosecution denies any misuse of the grand jury process. Specifically, the prosecution did not present new evidence to the second grand jury, nor did it use the grand jury to discover new evidence for trial. The prosecution's reasons for a superseding indictment are proper, and the defendants are not prejudiced by the minor changes.

■ " 'Once a defendant has been indicted, the government is precluded from using the grand jury for the "sole or dominant purpose" of obtaining additional evidence against him.' " *United States v. Thompson,* 944 F.2d 1331, 1337 (7th Cir.1991) (quoting *United States v. Moss,* 756 F.2d 329, 332 (4th Cir. 1985)), *cert. denied,* — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *see also United States v. Gibbons,* 607 F.2d 1320, 1328 (10th Cir.1979) ("[I]t is improper to use the grand jury for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery, although this may be an incidental benefit." (citations omitted)). Quite simply, the prosecution may not use the grand jury process principally to supplement its pretrial discovery on a pending indictment. 8 James W. Moore, *et al., Moore's Federal Practice* ¶ 6.04[5] (1989). If there is a legitimate purpose for the grand jury investigation, the proceeding is proper even though the prosecution obtains incidental benefits. *Gibbons,* 607 F.2d at 1329.

■ A " 'grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.' " *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 301, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991) (quoting *United States v. Mechanik,* 475 U.S. 66, 75, 106 S.Ct. 938, 944, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in judgment)). Consequently, the defendant has the burden of demonstrating

an abuse of the grand jury process. *United States v. Breitkreutz,* 977 F.2d 214, 217 (6th Cir.1992). In particular, the defendant must show that the government's primary purpose for the second grand jury proceeding was to collect evidence relating to pending charges. *United States v. Thompson,* 944 F.2d at 1337.

■ Though easy to state, the rule " 'is difficult, if not impossible, to enforce.' " *Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 30 (2nd Cir.1985) (quoting Moore, *et al., supra* ¶ 6.04[5] ). The difficulty is with the proof. *United States v. Raphael,* 786 F.Supp. 355, 358 (S.D.N.Y.), *aff'd, United States v. Alegria,* 980 F.2d 830 (2nd Cir.1992). "[C]ourts have looked at the circumstances of particular cases in deciding the kind of showing that they would require either from the party challenging the grand jury or from the government." *In re Grand Jury Proceedings,* 814 F.2d 61, 71 (1st Cir.1987). The court should accept at face value the prosecution's word that the dominant purpose of the grand jury proceedings is proper, unless there is an "indicative sequence of events demonstrating an irregularity." *United States v. Raphael,* 786 F.Supp. at 358. This approach accords with the presumption of regularity attaching to grand jury proceedings and with the prosecution's ethical and legal obligations.

■ A superseding indictment necessarily indicates the prosecution's repeated use of the grand jury process. Nevertheless, the fact of a superseding indictment does not, by itself, indicate an improper prosecutorial purpose. Any time prior to trial, the government may obtain a superseding indictment. *United States v. Fisher,* 871 F.2d 444, 451 n. 7 (3rd Cir.1989); *United States v. Edwards,* 777 F.2d 644, 649 (11th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *see United States v. Wilks,* 629 F.2d 669, 672 (10th Cir.1980) ("Absent prejudice to the defendant, a superseding indictment may be filed at any time before trial."). The defendants do not contend that the prosecution intended to harass them by the superseding indictment. *See United States v. Edwards,* 777 F.2d at 649. Nor do they argue prejudice from sur-

prise or lack of notice as to the charges or allegations found in the superseding indictment. (Dk. 87 at 8). Instead, the defendants contend the prosecution abused the grand jury process in obtaining a superseding indictment to strengthen its case or to gather evidence on the original indictment.

A tenet of the defendants is that the government may not use the grand jury to bring a superseding indictment that "impermissibly" strengthens its case on the pending indictment. The defendants contend the prosecution's reasons fall within the impermissible category. They offer no authority or analysis for their position that the prosecution acts impermissibly in "strengthening" what the indictment charges regardless of what use is made of the grand jury's investigatory powers.

The Tenth Circuit did say in *Gibbons* that it was improper for the government to use a grand jury "for the primary purpose of strengthening" its case. 607 F.2d at 1328. As used in *Gibbons* and in the cases cited by it, impermissible "strengthening" means using the factfinding function of the grand jury solely or principally to improve the government's case as to the evidence. *See Gibbons*, 607 F.2d at 1328 (argued improper use to discover new evidence against defendant or to freeze and preserve co-defendant's testimony for trial); *United States v. Beasley*, 550 F.2d 261 (5th Cir.) (argued improper use to secure a witness's recanted testimony), *cert. denied*, 434 U.S. 863, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976) (argued improper use to discover and preserve evidence to be used at trial of pending indictment), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977); *In re Maury Santiago*, 533 F.2d 727, 730 (1st Cir. 1976) (argued improper use to gather information to be used at trial of a pending indictment or to harass a witness for unpopular political beliefs); *Beverly v. United States*, 468 F.2d 732, 743 (5th Cir.1972) (argued improper use to gather evidence for prosecution of pending case); *United States v. Fisher* 455 F.2d 1101, 1104–05 (2nd Cir.1972) (held improper use to "freeze" a witness's testimony, but the defendant was not prejudiced); *United States v. George*, 444 F.2d 310, 314 (6th Cir.1971) (argued improper use to uncover facts relating to pending indictment); *United States v. Dardi*, 330 F.2d 316, 336 (2nd Cir.) (argued improper use to gather evidence and to pressure witness into providing information and leads for use at trial), *cert. denied*, 379 U.S. 845, 85 S.Ct. 51, 13 L.Ed.2d 50 (1964). In other words, the prosecution abuses the grand jury process when grand jury is used solely or primarily to gather or discover additional evidence, to preserve a witness's testimony, to pressure a witness, or to lock-in a witness's testimony. *See, e.g., United States v. Jenkins*, 904 F.2d 549, 559 (10th Cir.), *cert. denied*, 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990) ("Jenkins asserts that the government was attempting to obtain more evidence to strengthen its pending case against him, an improper use of the grand jury."). It is true that a government's case may be strengthened in some sense when the superseding indictment refines the charging language, changes the operative theory, or clarifies the elements to the charge. This kind of "strengthening" does not, however, abuse the grand jury's factfinding or investigatory powers. Moreover, this kind of "strengthening" does not relate to the prosecution gathering, discovering, or preserving evidence to be used at trial on a pending indictment.

The defendants principally rely on the differences between the two indictments as circumstantial evidence of the prosecution's improper purpose. The court cannot find in the defendants' arguments a reasonable inference that the prosecution presented the case to the grand jury a second time in order to gather or preserve evidence. The change in count one of putting in an earlier ending date of the conspiracy corresponds with the very relief requested by the defendant Jackson in his motion to strike. (Dk. 32). This minor change does not prejudice the defendants and was apparently made for proper reason of conforming the indictment with the anticipated evidence. The changes to the counts charging aiding and abetting the unlawful supplementation of federal salary do not suggest an improper purpose. The prosecution refined the charging language clarifying the very ambiguities that the defendants

earlier argued in their motion to dismiss. (Dk. 28). The only other argued changes are to count thirty-two. The lead prosecutor logically explains that with her recent assignment to this case she chose to pursue this obstruction of justice count under a conspiracy theory. The facts now constituting count thirty-two are essentially the same as in the original indictment, and the defendants are not prejudiced by the changes in theory and language. As for the other changes to count thirty-two, the defendants themselves offer the motives for the prosecution—to address the deficiencies raised in the defendants' earlier motion to dismiss and to ensure that there is an express allegation concerning the existence of a conspiracy for which the co-conspirator statements may be offered—neither of which is shown to be an improper purpose.

The comparison of the two indictments does not suggest the grand jury was convened solely or primarily to conduct discovery or to gather evidence. Any additional evidence or information gathered was incidental to the prosecution seeking a superseding indictment that improved the charging language, that addressed some of the legal deficiencies advanced by the defendants, and that changed the legal theory but not the facts. When placed in the context of this case's procedural history, the differences between the two indictments do not give rise to any reasonable inference that the government's primary purpose for the second grand jury proceeding was to conduct discovery or to strengthen its case as to the evidence against the defendants on the pending charges.

■■■ The defendants' arguments to the contrary are untenable. In substance, the defendants argue that it is prima facie evidence of an improper motive whenever a superseding indictment is returned that changes an existing count and does not add a new count. None of the cases cited by the defendants support such a sweeping proposition. Instead, the courts have looked for irregular circumstances indicating the absence of a proper purpose or the presence of an improper purpose. The mere fact that a change is made is not enough, particularly

when the record amply supports that the prosecution had a proper motive for pursuing the superseding indictment. The timing of the second grand jury proceeding is fully consistent with the prosecution's articulated purposes and does not amount to a suspicious irregularity. Considering the prosecution's apparent motives, the court can find nothing irregular about the passage of time between the first and second grand jury proceedings. Moreover, the prosecution represents that the investigation into Parkview Hospital is ongoing. "There is nothing improper about the government continuing its investigation after an indictment is filed, with obvious limitations, of course." *United States v. Beasley,* 550 F.2d at 266. In sum, the defendants offer baseless speculations and " 'nothing beyond [their] own unproved suspicions to prove that [the witnesses] were improperly summoned before the grand jury for the sole or dominant purpose of preparing the pending indictment for trial.' " *United States v. Breitkreutz,* 977 F.2d at 217. Even if there was evidence of an abuse of the grand jury process, the defendants can show no prejudice requiring dismissal of the indictment. *See United States v. Jenkins,* 904 F.2d at 559–60. The defendants' motion is denied.

### Motion to Compel Production of Grand Jury Transcripts

■■■ The defendants ask for the entire transcripts from the original and second grand jury investigations. They argue the need to substantiate the basis of their motion to dismiss. The government opposes the motion and accuses the defendants of attempting to launch another fishing expedition.

It is a " 'long established policy that maintains the secrecy of grand jury proceedings in the federal courts.' " *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983) (quoting *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077 (1958)). "Since the 17th century, grand jury proceedings have been closed to the public and records of such proceedings have been kept from the public eye." *Doug-*

*las Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218 n. 9, 99 S.Ct. 1667, 1673 n. 9, 60 L.Ed.2d 156 (1979). There are a number of reasons for the secrecy ranging from protecting witnesses who testify before the grand jury to preventing those who are about to be indicted from running. *Sells Engineering,* 463 U.S. at 424, 103 S.Ct. at 3138. The secrecy "is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *Id.* at 424–25, 103 S.Ct. at 3138 (quoting *United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)).

▮▮▮▮ "Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy." *Sells Engineering,* 463 U.S. at 425, 103 S.Ct. at 3138. The standard for disclosure of grand jury matters under Rule 6 comes from *Douglas Oil,* where the Court held:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

441 U.S. at 222, 99 S.Ct. at 1674. A defendant seeking disclosure has the burden of showing that there exists a "particularized need" for the material to avoid possible injustice and that the "particularized need" outweighs "the public interest in the secrecy of the proceedings." *In re Lynde,* 922 F.2d 1448, 1452 (10th Cir.1991) (citing *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675). The trial court in the exercise of sound discretion decides whether the defendant has demonstrated a particularized need. *United States v. Warren* 747 F.2d 1339, 1347 (10th Cir. 1984). Particularized need is more than a wish to go fishing for useful material. *United States v. Kim,* 577 F.2d 473, 478 (9th Cir.1978); *see Cullen v. Margiotta,* 811 F.2d 698, 715 (2nd Cir.) ("Requests for wholesale disclosures should generally be denied...."), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). By asking for the entire transcripts of both proceedings, the defendants reveal their wish to go on a fishing expedition for anything that might help them.

▮▮▮▮ The rule is as exacting when the defendant asks for the protected materials in order to challenge the propriety of the grand jury proceedings. "Before disclosure of the grand jury transcripts, which would corroborate the Defendants' arguments can be ordered, the Defendants must offer evidence of a 'substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury.'" *United States v. Cannistraro,* 800 F.Supp. 30, 50–51 (D.N.J.1992) (quoting *United States v. Budzanoski,* 462 F.2d 443, 454 (3rd Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972)). Mere speculation over what may have occurred is not enough to meet this burden or to overcome the presumption of regularity attached to grand jury proceedings. *United States v. Santoro,* 647 F.Supp. 153, 173 (E.D.N.Y. 1986) (noted the Catch–22 dilemma inherent in this rule but followed it nonetheless), *aff'd,* 880 F.2d 1319 (2nd Cir.1989); *see, e.g., United States v. Fife,* 573 F.2d 369, 372 (6th Cir.1976) (defense counsel's "understanding" that there were two grand juries is a mere conclusion lacking the factual support necessary to justify disclosure of the grand jury proceedings), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977); *United States v. Wood,* 775 F.Supp. 335, 336–37 (W.D.Ark.1991) (the mere assertion that two grand juries probably investigated the events leading to the indictment is insufficient). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres,* 901 F.2d 205, 233 (2nd Cir.) (citation omitted), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The defendants' arguments fall far short of showing a substantial likelihood of prosecutorial abuse of the grand jury process. The court declines to order the disclosure of grand jury materials or to conduct an in camera examination of the same on the weight of the defendants' baseless speculations. The defendants' motion is denied.

## Jencks Act Request For Interview Notes and Unredacted Grand Jury Testimony

The defendants jointly moved for an unredacted copy of the grand jury testimony of

James A. Leiker, Pam Dieter, Cheryl Bozarth, Beverly Rice, Teresa Markowitz and Doug Montgomery and for the prior written interview statements adopted by the witnesses during their grand jury testimony. (Dk. 47). On the issue of redaction, the defendants argued that the court, not the prosecution, is to determine what portions, if any, of a prior statement should be delivered to the defendants. The government responded that the redactions concern matters affecting a continuing investigation of other criminal violations and of other possible referral sources to Parkview. The court ordered the government to produce for the court's in camera inspection the unredacted grand jury testimony of these five witnesses. (Dk. 52 at 54).

On April 26, 1994, the government produced the unredacted testimony as requested. Having reviewed each redaction, the court does not find that any of them relate to a subject matter on which the particular witness is anticipated to testify. In the event the witness does testify at trial to one of these matters, the court expects the prosecution will alert the court to the same, and the court will then consider the prosecution's asserted reason for withholding that portion of the witness's prior statement. Specifically, the court anticipates that the prosecution in camera will explain at that time the nature of the ongoing federal investigation that would be jeopardized by the disclosure of these statements.

■ On the issue whether the witnesses adopted their statements during their grand jury testimony, the government also produced on April 26, 1994, the rough notes taken during the interviews of these five witnesses and any final reports prepared from those notes. The court considered whether these notes and reports qualify under the Jencks Act as a written statement signed or adopted or approved by the witness, 18 U.S.C. § 3500(e)(1) or as "a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such statement," 18 U.S.C. § 3500(e)(2). On these matters, the court heard in camera on June 3, 1994, the testimony of federal agents: Ed

Mendicello, A.L. McHenry and Troy Bird. They testified generally to the purpose and manner of the interviews, note-taking, and report preparation. After reviewing the notes, reports and grand jury transcripts and hearing the agent's testimony, the court is convinced that the interview notes and reports are not statements for purposes of the Jencks Act.

■ A federal agent's notes from an interview or report made from them is producible under the Jencks Act, 18 U.S.C. § 3500(e)(1), only if the report or notes were read back to and verified, approved, or acknowledged as true by the witness. *United States v. Medina,* 992 F.2d 573, 580 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994); *United States v. Boshell,* 952 F.2d 1101, 1104–05 (9th Cir.1991). "Cases construing a witness's adoption of an agent's report clearly contemplate an interchange between witness and agent in which the witness either signs or more formally approves the statement." *United States v. Newman,* 849 F.2d 156, 160 (5th Cir.1988) (citations omitted). The interchange contemplated is the equivalent of the witness being "fully apprised of the contents of the agent's report" and then approving or ratifying the entire report. *Id.* The Ninth Circuit has held that a witness adopts or approves notes as a statement when the witness refers to and uses notes while testifying before the grand jury. *United States v. Wallace,* 848 F.2d 1464, 1470 (9th Cir.1988).

None of the agents testified to using procedures through which any of the five witnesses could have approved or acknowledged the agents' notes and reports. During the grand jury proceedings, the prosecutor asked the five witnesses some questions about selected subjects and events found in the agents' reports. In doing so, the prosecutor did not provide the witness with a copy of the report and did not read the entire report to the witness. In most instances, the prosecutor asked questions based not on verbatim readings from the report but on his own understanding or summary of what the report said. In short, the prosecutor referred to and made use of the agent's reports, not the witness. Moreover, the manner in which

the prosecutor made use of the agent's reports is not the equivalent of an interchange in which the witness adopts or approves the agent's report. The agent's reports and notes are not statements as defined at 18 U.S.C. § 3500(e)(1).

 Because the defendants have argued that the agent's notes and reports qualify as Jencks Act statements, the court, on its own, has considered the alternative definition of statement found at § 3500(e)(2). *See United States v. Rewald,* 889 F.2d 836, 867 (9th Cir.1989), *modified on other grounds,* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). "[I]nvestigators' *reports* 'clearly fall within the language of the Jencks Act.'" *United States v. Hudson,* 813 F.Supp. 1482, 1490 (D.Kan.1993) (quoting *United States v. Allen,* 798 F.2d 985, 997 (7th Cir.1986)); *see United States v. Smith,* 984 F.2d 1084, 1086 (10th Cir.) ("Interview notes could be 'statements' under the Act if they are substantially verbatim." (citations omitted)), *cert. denied,* ── U.S. ──, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993). In determining if the material meets the (e)(2) definition, the court must satisfy itself that the statement can fairly be said "to reflect fully and without distortion" the witness's own words during the interview. *Palermo v. United States,* 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959); *see United States v. Morris,* 957 F.2d 1391, 1401 (7th Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992). An agent's summary of an oral statement that is not signed or adopted by the witness is not a Jencks Act statement. *United States v. Marshall,* 985 F.2d 901, 908 (7th Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). "[O]nly those statements which could properly be called the witness' own rather than the product of the investigator's selections, interpretations, and interpolations" were thought by Congress to be fair matters for impeachment. *Palermo v. United States,* 360 U.S. at 350, 79 S.Ct. at 1223-24.

The agents testified that their notes are summaries of what the witnesses said during the interviews. The agents did not attempt to write down every word spoken or every thought articulated by the witness. Infrequently, the agents jotted down complete statements as accurately as possible and put quotation marks around them. They later prepared their reports from their notes and their own recollection of the interview. The agents explained that the reports were intended principally to assist the prosecution during the grand jury investigation. Specifically, the reports enabled the prosecution to decide whether a witness knew any relevant information and when to call that witness as it related to the particular area of investigation.

The court has reviewed the notes taken during the interviews and reports prepared on those interviews. For the most part, the notes appear incomplete and fragmentary. They consist of longhand words and phrases that refer generally to what a witness said. In several instances, the notes make cryptic references. They indicate little effort or attempt to use a witness's own words. The truncated notes evidence the agent's selections of the witnesses' recitals. Moreover, the notes contain interpolations and impressions by the agents. The court is confident that the agent's notes and reports prepared from them do not reflect fully and without distortion the witness's own words spoken during the interview. Nor does court believe it fair to the witnesses to disclose isolated complete statements that are set off by quotation marks in the agents' notes. The risk of distortion from this selective quotation is one of the dangers noted by the Supreme Court in *Palermo.* 360 U.S. at 352, 79 S.Ct. at 1224-25; *see United States v. Gross,* 766 F.Supp. 302, 311-12 (E.D.Pa.1991). The notes and reports do not qualify as statements under § 3500(e)(2).

### Jury Questionnaire

 The defendants propose a jury questionnaire arguing multiple advantages. The only advantage unique to this case is that the questionnaires can obtain the private and confidential information regarding prospective jurors' contact with Parkview Hospital of Topeka or other mental health care facilities without embarrassment. The prosecution opposes the use of a jury questionnaire.

Voir dire examination is intended to enable the court to select an impartial jury and to assist counsel in using their peremptory challenges. *Mu'Min v. Virginia,* 500 U.S. 415, 430–31, 111 S.Ct. 1899, 1907–08, 114 L.Ed.2d 493, 509 (1991). The conduct and content of voir dire are matters entrusted to the trial court's broad discretion. *United States v. Maldonado–Rivera,* 922 F.2d 934, 970 (2nd Cir.1990), *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991). "The judge decides what questions may be addressed to the jury panel, and 'although the questioning must be fair, it need not include specific points requested by a particular defendant.'" *Id.* (quoting *United States v. Tutino,* 883 F.2d 1125, 1133 (2nd Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1992)). The voir dire examination is adequate if it tests the qualifications and competency of the prospective jurors and if the tests employed reasonably assure that prejudice, if present, would have been discovered. *United States v. Bedonie,* 913 F.2d 782, 795 (10th Cir.1990), *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

In the typical case, a written questionnaire works a significant savings in time only if the prospective juror's written responses are made under penalty of perjury and can substitute for the oral voir dire. This savings in time is not without a cost. The court, the parties and their attorneys lose the opportunity to observe demeanor. The Supreme Court said in *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981):

> Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.

The Supreme Court echoed this same concern about observing juror demeanor in *Mu'Min* when the defendant argued that pretrial written questionnaires would allow the juror to disclose the content of pretrial publicity. 500 U.S. at 425, 111 S.Ct. at 1905, 114 L.Ed.2d at 505 ("[S]uch written answers would not give counsel or the court any exposure to the demeanor of the juror in the course of answering the content questions.") How a person says something can be as telling as what a person says. The defendants argue that the written questionnaire process gives the prospective jurors more time to reflect and record responses thus creating the likelihood of more accurate and complete responses. Most of the general voir dire examination, however, is not difficult and does not require detailed answers. Nor does additional time to reflect over questions necessarily mean more accurate and truthful answers. This court believes that oral voir dire is sufficient in the typical criminal case and that extensive written questionnaires would not materially assist the voir dire examination.

Courts resort to extensive jury questionnaires in such circumstances as where lengthy voir dire may be necessary, many prospective jurors are likely to be ineligible, an anonymous jury procedure is used, questions regarding extensive pretrial publicity carry a serious risk of prejudicing potential jurors, or the case directly implicates sensitive, personal, moral or religious issues. This case possibly touches upon two such circumstances. The voir dire may entail some questions about pretrial publicity and about a prospective juror's confidential contact with Parkview Hospital. The court, however, believes it unlikely that these two areas of inquiry will involve a significant number of jurors or that the matters cannot be adequately handled through standard oral voir dire procedures. General questions about prior knowledge of the case or about contact with Parkview Hospital will identify the panel members who may have something more to say that could prejudice the other panel members or that could embarrass that panel member. If necessary, the panel member will be questioned at the bench outside the hearing of other panel members. This procedure is as effective as written questionnaires. *See Tomson v. Stephan,* 699 F.Supp. 860 (D.Kan.1988). The defendants' joint motion for leave to submit jury questionnaire is denied.

## Louis Garcia's Presentence Report

In its order of May 6, 1994, the court addressed the defendants' joint motion for production of Louis Garcia's presentence investigation report (PSIR). The court observed that the Tenth Circuit in *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993), had distinguished on several grounds the earlier decision of *United States v. Dingle*, 546 F.2d 1378, 1380 (10th Cir.1976), in which it was held that the government need not produce PSIRs under *Brady* or the Jencks Act. This court further noted that the *Sasser* panel had not asked for en banc reconsideration of *Dingle* and that what *Dingle* said about the need for confidentiality of PSIRs remains the law of the circuit until *Dingle* is overruled. This court directed the government to produce for the court's in camera inspection Garcia's PSIR along with a statement whether the parties have filed objections to the PSIR.

The government promptly submitted Garcia's PSIR under seal and the court has reviewed it in camera. The court does not find any Jencks Act statements in the PSIR. There are no substantially verbatim recitals contained in the PSIR. Nor is there a basis for finding that Garcia adopted any portion of the PSIR by reason of the presentence procedures that have occurred. For *Brady* purposes, the court also finds that the impeachment value of the PSIR is cumulative of the documents and information already possessed by the defendants and that the impeachment value is outweighed by the confidentiality interests associated with PSIRs. Upon the defendant's renewed motion at trial, the court will reconsider disclosure of Garcia's PSIR after hearing Garcia's testimony about his understanding of the possible sentence facing him. The court denies the defendants' joint motion for production of portions of Garcia's PSIR.

## Miscellaneous Matters

At the hearing on May 27, 1994, counsel for the defendant Martinez informed the court that Gene Garcia, counsel for Louis Garcia, responded to the subpoena with a sealed envelope and accompanying letter dated May 20, 1994, which read in pertinent part: "Enclosed please find, sealed, the documents which you requested as per you subpoena. Please do not break the seal until the judge has ruled in this matter." (Defs' Ex. M1). Gene Garcia wrote defense counsel again by letter dated May 24, 1994. He requested that sealed envelope not be opened until the court approves it "or gives Mr. Garcia the opportunity to object on the basis that the information is privileged, belonging to Mr. Louis Garcia, who wished to exercise his privilege, is work product, and is available though (sic) other means which by-passes the aforementioned issues." (Defs' Ex. M2). At the hearing, the court accepted Garcia's sealed envelope and placed it under seal.

To this date, neither Gene Garcia nor Louis Garcia has filed any formal motions or objections with the court regarding disclosure of the contents of the sealed envelope. The court opened and inspected the envelope in camera. Contained inside was a copy of a plea agreement. The apparent terms of the plea agreement are identical to those found in the plea agreement that is of record in Louis Garcia's case and that is available to the defendants. The only difference between the two agreements is that this copy of the plea agreement was executed by the parties prior to the one of record. From the face of this document, the court sees no colorable argument that it qualifies for protection under the attorney-client privilege or the work product doctrine. Not knowing of any reason why this copy of the plea agreement should not be disclosed, the court attaches it as exhibit A to this order and directs that it be served on the parties as a part of this order.

One final matter is the subpoena request for Louis Garcia's psychiatric records. The court in its order of May 6, 1994, granted the defendants' subpoena request for those records on certain conditions. One of those conditions was that the subpoena would require production to only the court on or before May 19, 1994. As of the date of this order, the court has not received any psychiatric records pursuant to subpoena. The court assumes the defendants will want to take some action. Until the records are

received and reviewed by the court in camera, the issues surrounding the psychiatric records are not ripe.

IT IS THEREFORE ORDERED that the defendants' joint motion to dismiss the indictment (Dk. 75) is denied;

IT IS FURTHER ORDERED that the defendants' joint motion to compel production of grand jury transcripts (Dk. 77) is denied;

IT IS FURTHER ORDERED that the defendants' joint motion for additional production of Jencks Act Material (Dk. 47) is denied on the conditions stated above;

IT IS FURTHER ORDERED that the defendants' joint motion for leave to submit jury questionnaire (Dk. 88) is denied;

IT IS FURTHER ORDERED that the defendants' joint motion for production of portions of Louis Garcia's presentence report (Dk. 62) is denied;

IT IS FURTHER ORDERED that the sealed envelope submitted by defense counsel from Gene Garcia is opened and attached hereto as Exhibit A and served on counsel along with this order.

EXHIBIT A

IN THE UNITED STATES
DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.

LOUIS ALBERT GARCIA,

Defendant.

No. 93–40035–01–RDR

*PLEA AGREEMENT*

*PURSUANT TO F.R.CRIM.P. 11(e)(1)(A)*

It is hereby agreed by and between the United States Attorneys Office for the District of Kansas [hereinafter also referred to as "District"], by its attorney Richard L. Hathaway, Assistant United States Attorney for the District of Kansas, and the defendant Louis Albert Garcia, personally and by his attorney, Gene A. Garcia, as follows:

1. Defendant Louis Albert Garcia will admit his guilt and enter a plea of guilty to Count 1 of the Indictment now pending in the above-captioned case in the District of Kansas. Count 1 charges a felony violation of Title 18 United States Code, Section 209. Garcia will enter his plea of guilty in the United States District Court for the District of Kansas no later than the close of business November 25, 1993. The maximum penalty is 5 years, a fine of $250,000.00, a term of supervised release of at least 3 years, and a special assessment of $50.00.

2. Defendant Garcia will provide the District with a full and truthful accounting and statement of all knowledge he has concerning his involvement and the involvement of all other people known to him in the matters charged in the indictment of this case, as well as his knowledge of any irregularities in the treatment of patients at hospitals or the practice of admitting of patients into hospitals.

3. In exchange for Garcia's plea of guilty and his full, complete and truthful cooperation in this investigation and pending case, the United States Attorney's Office for the District of Kansas agrees to dismiss the remaining counts of the indictment, and to bring no further criminal charges against him resulting from the activities which form the basis of the indictment in this matter.

Further, the District agrees if appropriate, to file prior to sentencing a USSG 5K1.1 motion, or subsequent to sentencing, to file a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure, to reduce his sentence to reflect his, substantial assistance in the investigation and/or prosecution of another person(s) involved in this offense or other offenses.

The defendant acknowledges and understands that the decision, whether to file this motion, and whether he has provided substantial assistance, is a matter that resides in the sole and exclusive discretion of the United States Attorney for the District of Kansas.

Should this Motion be filed by the District on the approval of the United States Attorney, both the District and the defendant are free to recommend an appropriate sentencing reduction to the Court, although the parties acknowledge that the appropriate sentencing reduction is a matter exclusively within the province of the sentencing Court.

The defendant acknowledges and understands that all information in the possession of the District concerning the defendant's involvement in the offense, as well as the nature, scope and extent of the defendant's cooperation, will be made known to the Court for the purpose of imposing an appropriate sentence.

4. Should defendant Garcia, in the sole opinion of the United States Attorneys Office for the District of Kansas, not comply fully, truthfully and honestly with the terms of this agreement, the United States Attorneys Office for the District of Kansas shall be immediately released from its obligations hereunder and may reinstate prosecution as if no agreement had been reached. Defendant Garcia also is aware and understands that his wilful failure to provide truthful information and testimony pursuant to this plea agreement could subject him to additional prosecution, including but not limited to charges of perjury, and obstruction of justice.

5. This written Plea Agreement supersedes any and all other agreements or negotiations which the parties may have previously reached or discussed, and this written plea agreement embodies each and every term of the agreement among the parties.

DATED: 11/17/93

RANDALL K. RATHBUN
United States Attorney
/s/ Richard L. Hathaway
Richard L. Hathaway
Assistant United States Attorney

DATED: 11-9-93

/s/ Louis Albert Garcia
Louis Albert Garcia
Defendant

DATED: 11-8-1993

/s/ Gene A. Garcia
Gene A. Garcia
Attorney for defendant
Louis Albert Garcia