UNITED STATES of America, Appellee,

v.

Irving JONES, Defendant,

Michael Burnett, Howard Krantz; and Steven Brown, Defendants–Appellants.

No. 41, Dockets 96–1438L, 96–1449.

United States Court of Appeals, Second Circuit.

Argued Aug. 27, 1997.

Decided Nov. 19, 1997.

Michael D. Pinnisi, Ithaca, NY (Pinnisi, Wagner, Sherwyn & Geldenhuys, P.C., on the brief), for Defendant–Appellant Steven Brown.

Margaret M. Giordano, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, David C. James, Jodi Avergun, Assistant United States Attorneys, on the brief), for Appellee.

Before: MESKILL and JACOBS, Circuit Judges, and KORMAN,* District Judge.

PER CURIAM.

Steven Brown appeals from a judgment of the United States District Court for the Eastern District of New York (Gleeson, *J.*), convicting him of conspiring to use and using the United States mail to commit murder-for-hire, and of using a firearm in the commission of a crime of violence, in violation of 18 U.S.C. §§ 371, 1958, 2, and 924(c). Following a five-week jury trial, Brown was convicted, along with several co-defendants, of the contract murder of Valerie Vassell, who was a cooperating witness in a New York State bank fraud case against original defendant-appellant Michael Burnett. Brown was shown to be the ultimate subcontractor of the murder contract put out by Burnett; he and another man (apparently the actual shooter) forced their way into Vassell's apartment and carried out the execution-style slaying.

---

* Honorable Edward R. Korman, United States District Court for the Eastern District of New York, sitting by designation.

Brown's sole ground of appeal is that the Government violated his right to a speedy trial under both the Speedy Trial Act, 18 U.S.C. § 3161 ("the Act"), and the Sixth Amendment to the Constitution. Brown does not contest his conviction on the merits; instead, he argues that he was deprived of his right to a speedy trial because the Government failed to charge him by federal indictment until approximately four months after he was transferred from state to federal custody pursuant to a writ of habeas corpus *ad testificandum*. We hold that this delay caused no violation of Brown's rights under either the Act or the Sixth Amendment, and therefore affirm his conviction.

## BACKGROUND

Valerie Vassell was murdered on January 14, 1994, in Staten Island, in the City of New York. The investigation into her murder was initially conducted by the New York City Police Department ("NYPD"). The first solid evidence that her death was the result of a broader contract-murder conspiracy was provided to federal investigators by a cooperating witness early in 1995. The witness implicated Brown in various aspects of the plot, and federal agents passed that intelligence along to the NYPD, which arrested Brown on March 4, 1995. Brown was indicted for murder in the second degree in Richmond County (Staten Island) on March 9; thereafter he was remanded into state custody at the City's Brooklyn House of Detention, where he was held without bail pending his trial for murder in Richmond County.

Upon his arrest on March 4, Brown gave written and oral statements to the police implicating himself and others in Vassell's murder; he also signaled possible interest in cooperating in the investigation. At the same time, state and federal authorities reached an agreement by which the NYPD would conduct the initial inquiry into Vassell's death, but the matter would be turned over for federal prosecution if a murder conspiracy case could be developed against Burnett and his accomplices. Accordingly, a meeting was held on March 16, 1995, to discuss Brown's possible cooperation; in attendance were state and federal prosecutors and law enforcement agents, as well as Brown and his court-appointed attorney. The parties agreed during the meeting that Brown would endeavor to cooperate in the Vassell investigation.

That same day, March 16, the Office of the United States Attorney for the Eastern District of New York obtained a writ of habeas corpus *ad testificandum* in aid of Brown's transfer from state to federal custody pursuant to his tentative agreement to cooperate. Brown's attorney expressly consented to the transfer (to a federal facility, also in Brooklyn), and further agreed to attend a meeting with federal prosecutors and his client on the following day, March 17. At that next meeting, held subject to a proffer agreement, prosecutors interrogated Brown about Vassell's murder. (A number of such sessions were conducted over the ensuing few months.) On March 27, 1995, co-defendants Burnett, Irving Jones, and Howard Krantz were indicted in the Eastern District of New York on charges of murder-for-hire in the Vassell case; a superseding indictment was filed on May 1.

In July 1995, Brown notified the Government that he no longer wished to cooperate in the investigation. Federal authorities in the Eastern District thereafter sought an indictment against Brown on charges of using the mail to commit murder-for-hire and using a firearm in the commission of a crime of violence. That indictment—the first federal charge against Brown—was handed down on July 17, 1995. On September 18, 1995, the Government added Brown to the indictment pending against Burnett and Krantz. (Jones had by then entered into a cooperation agreement.) Superseding indictments against Brown, Burnett, and Krantz were returned on October 20 and November 13, 1995.

Brown first raised the speedy trial issue by way of a pro se motion dated July 26, 1995, seeking dismissal of the indictment against him for violation of the Act; the motion was renewed as part of a larger motion by Brown's attorney dated September 12, 1995. The court heard argument on Brown's speedy trial motion on October 20, 1995, and denied the motion from the bench after chal-

lenging Brown's attorney to supply "any authority ... that supports [the] legal argument that ... the speedy trial clock starts running before [the defendant is] charged," and receiving none.

Brown was tried, along with Burnett and Krantz, in February and March, 1996, and was found guilty on all counts. On June 28, 1996, Brown was sentenced to a term of mandatory life imprisonment without parole.

## DISCUSSION

On appeal, Brown advances three arguments to support his claim that he was deprived of his right to a speedy trial. First, he argues that his transfer to federal custody pursuant to the writ *ad testificandum* was an "arrest" for purposes of the Speedy Trial Act, and that the Government violated the Act by failing to indict him within 30 days thereafter. Second, Brown argues that (even if the initial transfer did not constitute an arrest), the indictment of his co-defendants ended the "lawful use" of the writ *ad testificandum*, and his detention thereafter amounted to constructive arrest cognizable under the Act. Finally, Brown argues that the Government violated his Sixth Amendment right to a speedy trial because the Government intentionally abused the writ *ad testificandum* to delay his indictment. None of these arguments has merit.

### A. *Brown's Transfer to Federal Custody Under the Writ* Ad Testificandum.

Brown argues that his transfer to federal custody constituted an "arrest" for purposes of the Act (requiring the Government to indict or release him within 30 days), because (a) the speedy trial clock is (or should be) started by the deprivation of liberty—*i.e.*, "custody"—and not the imposition of formal charges, and (b) the Government intended all along to prosecute him for Vassell's murder.

The plain language of the Act refutes Brown's first contention. Section 3161(b) provides that:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual *was ar-*

*rested* or served with a summons *in connection with such charges.*

18 U.S.C. § 3161(b) (emphasis added). "[A] defendant does not become an 'accused' for Speedy Trial Act purposes until he is under *federal* arrest." *United States v. Lai Ming Tanu,* 589 F.2d 82, 88 (2d Cir.1978). Brown's contention is that his transfer to federal custody pursuant to the writ *ad testificandum* was a "federal arrest" under the Act. Brown is mistaken. As we have previously observed, the "language of [§ ] 3161(b) ... can be easily read to state that the triggering 'arrest' must be 'in connection with such charges.' *An arrest that is not for purposes of answering to criminal charges thus does not begin the thirty-day period."* *United States v. Bloom,* 865 F.2d 485, 490 (2d Cir.1989) (emphasis added). *See also id.* (noting that other courts have "uniformly [held] that an individual is not arrested under [§ ] 3161(b) until he is taken into custody after a *federal arrest for the purpose of responding to a federal charge"*) (citation and quotations omitted) (emphasis added) (first alteration in original). Restrictions of liberty that are "*not* in connection with the filing of [a] complaint or for purposes of [the defendant's] facing federal charges ... d[o] *not* constitute the type of imposition that triggers the Speedy Trial Act's timing provisions." *Id.* at 491 (emphasis added); *see also United States v. Sorrentino,* 72 F.3d 294, 297–98 (2d Cir.1995) (rejecting claim under the Act where defendant's first arrest was not "for purposes of answering a criminal charge").

Brown argues that the word "arrest" in the Act is ambiguous, that the word therefore should be construed in his favor in accordance with the rule of lenity, and that "[a] person has been 'arrested' when he is taken by law enforcement and has his liberty deprived." Alternatively, he argues that "arrest" should be interpreted "functionally," as in the context of right-to-counsel cases under the Fifth Amendment, in which the meaning of the term (according to Brown) is broadened to include "restraints comparable to those associated with a formal arrest .... regardless of whether there has been a formal charge filed or a formal declaration of

arrest." *Id.* (citing, *inter alia, United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992)).

We think that the language of the Act is unambiguous: it requires that an individual be formally charged with the commission of an offense not more than 30 days from the date on which the individual was arrested "in connection with" those charges. *See* 18 U.S.C. § 3161(b). This language can only mean that, to trigger the Act, the restraint on the defendant—be it the formal federal arrest, as we think plainly required, or some lesser form of custody, as Brown argues—must be imposed "for purposes of [the defendant's] answering to criminal charges." *Bloom,* 865 F.2d at 490. The Act does not afford protection if the deprivation of liberty—however labelled—is for a reason *other than* requiring the defendant to answer to federal criminal charges.

Our reading of the statute as unambiguous precludes application of the rule of lenity, and also renders immaterial Brown's concern that "a striking dissonance" would result if individuals could "simultaneously be in 'custody' with a right to counsel without having first been 'arrested' and thus protected by the Act." Whatever the circumstances that may trigger a right to counsel under the Fifth Amendment—or even the *constitutional* right to a speedy trial under the Sixth Amendment—Congress decided that the *statutory* right to federal indictment within 30 days would be available only where an individual was arrested "in connection with the filing of [a] complaint or for purposes of ... facing federal charges." *Bloom,* 865 F.2d at 491.

Brown's transfer to federal custody did not start the clock under the Act, because he was transferred under a writ of habeas corpus *ad testificandum* pursuant to his tentative agreement to cooperate in the investigation of Vassell's murder, and therefore was *not* taken into federal custody "in connection with" or "for purposes of" answering federal charges. His formal indictment four months after the transfer violated no provision of the Act.

■ This conclusion bears directly upon Brown's second contention, that the Government intended all along to prosecute him (as

it eventually did) for murdering Vassell. According to Brown, "[a]ll objective evidence suggests" that the Government obtained the writ *ad testificandum* and transferred him to federal custody with the intent to indict him in the broader contract-murder conspiracy. Thus Brown argues that in effect his transfer *did* occur "in connection with the filing of [a] complaint or for purposes of ... facing federal charges," *Bloom,* 865 F.2d at 491, and that the subsequent delay therefore resulted in a violation of the Act. As support he alleges that, at the time of the transfer, "he already was the target of a federal investigation, he was not called to testify before any grand jury or at any trial as a cooperating witness at any time, and he ultimately was charged for the same offenses that caused his initial detention."

None of these circumstances, either individually or together, furnishes the necessary inference that the federal government took Brown into custody for the purpose of filing charges against him. Brown was transferred after a meeting with state and federal authorities at which both he and his attorney expressly agreed that he would attempt to cooperate in the federal investigation of Vassell's murder. That meeting, in turn, was prompted by Brown's intimation to the NYPD (immediately upon his arrest) that he might be willing to cooperate. And of course, Brown *did* cooperate with the Government over a period of several months, attending proffer sessions with federal prosecutors and his attorney.

It is of no consequence that Brown was never called before the grand jury, or that the Government promptly indicted him upon his announcement that he no longer wanted to cooperate. In the absence of a cooperation agreement, the Government was entitled to use the information provided by Brown as it saw fit, and was entitled to prosecute him once his usefulness as an informant ended. Nothing in the record supports Brown's claim that the Government transferred him pursuant to the writ with the intent to prosecute him, or that the transfer was effected for the purpose of having him answer to federal criminal charges.

Finally, to the extent that Brown alleges that the Government abused the writ by transferring him with the ulterior purpose of prosecuting him, and thereafter detained him under false pretenses before finally indicting him according to plan, that concern implicates Brown's Sixth Amendment right to a speedy trial, as discussed in section B below, but we decline to read the Act so broadly as to reach that conduct as well.

## B. *The Indictment of Brown's Co–Defendants: "Constructive Arrest."*

■ Brown argues that because the Government's stated intention in obtaining the writ *ad testificandum* was to facilitate his cooperation in the investigation of his co-defendants, the "lawful use of the writ expired as a matter of law when Burnett was indicted" for Vassell's murder. At that point, the Government's continued detention of Brown became "an exercise of prosecutorial power, not grand jury investigative power, and thus constitute[d] a constructive federal arrest." *Id.* at 11. In support, Brown states:

A grand jury's legitimate investigative powers over a case end when the grand jury returns an indictment in that case. As a result, when Burnett was indicted, the grand jury lost its power to hold Brown for further investigation of Burnett, and Brown should have been returned to state custody or formally charged federally.

*Id.* at 10–11.

■ The investigative power of a grand jury does not necessarily end with the return of an indictment. "It is, of course, improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment." *United States v. Leung,* 40 F.3d 577, 581 (2d Cir.1994). But when there is "some proper dominant purpose for [a] postindictment subpoena, the government is not barred from introducing the evidence obtained thereby." *United States v. Sasso,* 59 F.3d 341, 351–52 (2d Cir.1995); *see also Leung,* 40 F.3d at 581. Post-indictment action is permitted to identify or investigate other individuals involved in criminal schemes, *see Sasso,* 59 F.3d at 352,

or to prepare superseding indictments against persons already charged, *see, e.g., United States v. Vanwort,* 887 F.2d 375, 387 (2d Cir.1989). To paraphrase *United States v. LaPorta,* 46 F.3d 152, 161 (2d Cir.1994) (citations and quotations omitted) (McLaughlin, J.): "By bringing a superseding indictment" against Brown and his co-defendants, "the government here was not 'preparing an already pending indictment for trial.' Rather, it was ensuring that it could try at the same time before the same jury [all] the crimes relating to" the conspiracy to murder Vassell.

After the initial indictments of Burnett *et al.,* the Government continued its active investigation of Vassell's murder, seeking to identify others potentially involved in the conspiracy, and preparing to file additional charges against those already indicted. The Government's continued detention of Brown in furtherance of that ongoing investigation was proper. Finally, Brown's "constructive arrest" argument, like his other statutory arguments, fails because he has not shown that his detention after the date of his co-defendants' indictment was "for purposes of answering to criminal charges." *See Bloom,* 865 F.2d at 490.

## C. *Sixth Amendment Claim.*

■ Brown makes two closely related arguments based upon the Sixth Amendment right to a speedy trial: (i) that the Government intentionally abused the writ *ad testificandum* in a "ruse" to circumvent the Speedy Trial Act, holding him "indefinitely while benefitting from his cooperation, all the while calculating the best time to charge him"; and (ii) that the Government deliberately delayed filing charges against him in order to avoid triggering the Act's protective timing provisions. Neither argument has merit.

There is no record evidence of a ruse to evade the Act. As the Government points out, Brown gave statements after his arrest implicating himself and others in Vassell's murder, and he was identified in lineups by two eyewitnesses; the Government therefore "could have charged Brown with the murder-for-hire of Valerie Vassell on the day of

Brown's initial arrest," if it had so chosen. Intentional abuses of the Act may raise Sixth Amendment concerns, but there is no indication that such abuse occurred here.

 Furthermore, Brown was not prejudiced by the delay. Courts look to four factors in deciding whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See, e.g., United States v. Forrester*, 60 F.3d 52, 59 (2d Cir.1995) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972)). Although "a showing of prejudice is not a prerequisite to finding a sixth amendment violation, courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." *Rayborn v. Scully*, 858 F.2d 84, 94 (2d Cir.1988) (citation omitted). *See also United States v. Marion*, 404 U.S. 307, 324–325, 92 S.Ct. 455, 465–466, 30 L.Ed.2d 468 (1971) (actual prejudice necessary for pre-indictment delay to amount to a denial of due process); *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) (same); *United States v. Snyder*, 668 F.2d 686, 689 (2d Cir.1982) (same).

Before Brown's transfer to federal custody in Brooklyn, he was already in state custody in Brooklyn, without bail, awaiting trial. Brown fails to allege, let alone show, prejudice by reason of the four-month delay between his transfer to federal custody and his indictment. Brown cannot show, for example, that witnesses or evidence became unavailable to him due to the delay; that he was deprived of access to his family or counsel by being transferred a great distance; nor even that he suffered any material change in status as a result of the transfer.

Finally, as with Brown's Speedy Trial Act claim, "the key Sixth Amendment issue is whether [he] was either arrested or subjected to substantial restrictions *for purposes of answering a criminal charge.*" *Bloom*, 865 F.2d at 491 (emphasis added). Because, as noted, Brown was not held for the purpose of answering federal criminal charges until the date of his federal indictment, his claim for pre-indictment delay fails under the Sixth Amendment as well.

In sum, no act of the Government violated Brown's constitutional right to a speedy trial.

## CONCLUSION

We have considered all of Brown's arguments and find them to be without merit. The district court's judgment is affirmed.