**UNITED STATES of America**

**v.**

**Richard Jonathan BLECH,
et al., Defendants.**

**No. 02 CR 122 JGK.**

United States District Court,
S.D. New York.

April 27, 2002.

E. Lawrence Barcella, Paul, Hastins, Janofsky & Walker, Washington, DC, for Richard Johnathan Blech.

R. Scott Thompson, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Thomas M. Rittweger.

William T. Ramsey, Nashville, TN, for Douglas C. Brandon.

Jerome A. Ballarotto, Trenton, NJ, for Robert S. Dehaven.

Timothy J. Coleman, New York City, United States Attorney.

## OPINION AND ORDER

KOELTL, District Judge.

Defendant Richard Blech was indicted on January 31, 2002 on charges of securities fraud (three counts) and wire fraud (four counts).[1] In March, 2002, Swiss authorities in Geneva conducted witness interviews in response to a United States request pursuant to the Treaty on Mutual Assistance in Criminal Matters, May 25, 1973, U.S.-Switz., 27 U.S.T. 2019 (the "MLAT"). Blech now moves to prohibit the Government from making any use of reports, transcripts, or recordings of those interviews, and to require the Government to provide the defendant with copies of any such reports, transcripts, or recordings. He has also requested additional relief relating to the Government's possible future use of compelled examinations in this case.

## I

The Indictment in this case alleges that Blech and his codefendants participated in a securities fraud scheme involving Credit Bancorp, Ltd. ("CBL"), a "group of related United States and foreign business organizations" headquartered in Geneva, Switzerland. (Indict. ¶¶ 1, 5.) The Indictment further alleges that Blech was, at all times relevant to the charges therein, a resident of France and a citizen of the United States, and the owner, president, chief executive officer, and chairman of the board of CBL. (Indict. ¶ 2.) On March 27, 2000, the Government filed a criminal complaint charging Blech with securities fraud, wire fraud, and money laundering. (Affirmation of Timothy J. Coleman, dated April 15, 2002 ("Coleman Aff."), ¶ 2.) Blech was arrested in France in April, 2000, at the request of the United States. (Id.) Blech

was extradited to the United States in early January, 2002. (Id. ¶ 5.)

The United States first requested the assistance of the Swiss authorities in connection with the CBL investigation in December, 1999. (Ex parte Affirmation of Timothy J. Coleman, dated April 15, 2002 ("Ex parte Coleman Aff."), Ex. A at 1; Affirmation of Judith Friedman, dated April 15, 2002 ("Friedman Aff."), ¶ 11.) In May, 2000, the United States Attorney's Office for the Southern District of New York, on behalf of itself and the Securities and Exchange Commission ("SEC"), submitted a supplemental MLAT request for legal assistance to the Office of International Affairs ("OIA") of the United States Department of Justice, which forwarded the request to the Swiss authority responsible for international legal assistance in June, 2000. (Ex parte Coleman Aff., Ex. A; Friedman Aff., ¶ 12.) Among other things, the supplemental MLAT request identified 14 witnesses that might have relevant information, and requested that the witnesses be interviewed. (Ex parte Coleman Aff., Ex. A at 7–8.)

According to the OIA attorney who was responsible for handling cooperation with Switzerland on CBL matters, Switzerland informed the OIA in April, 2001 that it had decided to grant the United States' request for interviews, and requested that the United States submit written questions for each witness. (Friedman Aff., ¶¶ 10, 14.) In May, 2001, the OIA attorney asked the Swiss authorities to prepare written summaries of the interviews and to permit United States representatives, including representatives of the United States Attorney's Office, to attend the interviews. (Id.) The OIA attorney asserts that the United States did not ask the Swiss authorities to compel the testimony of the witnesses, prepare a transcript of the interviews, or examine the witnesses under oath. (Id.)

In or around February, 2002, the Geneva police issued notices for various witnesses to appear for interviews in mid-March, 2002,

---

1. The Indictment also names additional defendants and includes other counts in which Blech is not charged.

pursuant to the United States request for international judicial assistance. (Def. Letter of Mar. 5, 2002 at 2 & Exs. A, B.) On March 5, 2002, Blech applied to this Court for an order requiring that the defense be allowed to participate in such examinations. (*Id.* at 6.) At the original hearing on the application, the Court asked whether the interviews could be postponed to allow an opportunity to consider the issues raised. In response to the Court's request, the United States Attorney's Office asked the OIA, which in turn asked the Swiss authorities to postpone the scheduled interviews. (Friedman Aff. ¶ 16.) However, because the interviews had been scheduled for three months, the Swiss authorities decided to go ahead with the interviews, and to base them on the questions the United States had previously submitted. (*Id.* ¶ 17.) According to the Government, from March 18 through March 22, 2002, the Swiss authorities interviewed certain of the witnesses identified in the supplemental MLAT request without the presence of any United States representatives, and the Swiss authorities are currently preparing summaries of the interviews. (*Id.* ¶¶ 17–18.) The OIA attorney indicates that she believes that the witnesses did not testify under oath and that no verbatim transcripts were kept. (*Id.* ¶ 18.) She also indicates that a witness could be fined, but not imprisoned, if the witness failed to appear for an interview, and that the witnesses were advised that false statements could subject them to criminal penalties under Swiss law. (*Id.* ¶¶ 6, 18.)

## II

■ Blech urges the Court to use its supervisory powers to ensure that the defense has the ability to be present at future interviews pursuant to the MLAT, and to prevent the Government from making use of the March, 2002 interviews which took place in the absence of defense counsel. He argues that using the MLAT process to obtain information is like the use of a grand jury for trial preparation after an indictment has been returned or the unilateral taking of depositions which would otherwise require a court order and the presence of defense counsel. While Blech acknowledges that neither the prohibition against using the grand jury primarily

for trial preparation nor the rule governing the use and conduct of depositions in criminal cases precisely applies to the use of the MLAT process or compels the Court to exercise its supervisory powers in the manner requested, he claims that taken together, the spirit of those standards indicates that the Court should permit defense participation in all "post-indictment compelled proceedings," such as the MLAT interviews. The parties agree that there is no case that directly addresses the issue.

The Government may not "use [a] grand jury for the sole or dominant purpose of preparing for trial under a pending indictment." *United States v. Jones*, 129 F.3d 718, 723 (2d Cir.1997) (punctuation omitted) (quoting *United States v. Leung*, 40 F.3d 577, 581 (2d Cir.1994)); *United States v. Bin Laden*, 116 F.Supp.2d 489, 492 (S.D.N.Y.2000) (collecting cases). "[A] defendant seeking to exclude evidence obtained by a post-indictment grand jury subpoena has the burden of showing that the Government's use of the grand jury was improperly motivated." *Leung*, 40 F.3d at 581. When a post-indictment subpoena relates to "some proper dominant purpose," such as investigating an as yet uncharged individual or preparing a superceding indictment, the resulting evidence is not barred. *Jones*, 129 F.3d at 723.

Fed.R.Crim.P. 15(a) provides that a court may, on motion from a party, order that a witness's testimony be taken by deposition "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial." Deposition witnesses are subject to compulsory process, and testify under oath; the depositions are recorded. Fed.R.Crim.P. 15(d); Fed.R.Civ.P. 30(b), 45. Parties must provide reasonable written notice of depositions, and the defendant has the right to be present. Fed.R.Crim.P. 15(b).

The Court finds that the specific restrictions sought by the defense with respect to the Government's use of the March, 2002 interviews, or the Government's presence at future MLAT interviews, are not warranted by the record at this time. The Court also

will not require the Government to request that the Swiss (or other foreign authorities in a similar situation) allow the defense to attend such interviews,[2] or require that the Government give notice of all planned interviews. The defense has failed to show that the Government's requests for witness interviews pursuant to the MLAT are an abuse of the MLAT process or are unfair so as to warrant the exercise of this Court's supervisory powers.

As the defense admits, the prohibition on the use of the grand jury "for the sole or dominant purpose of preparing for trial under a pending indictment," *Jones*, 129 F.3d at 723, does not apply, by its terms, to the MLAT interviews at issue in this case. Nor should it be extended to do so. The dominant-purpose inquiry is a legal standard that derives from courts' special concern for the grand jury, "a body operating peculiarly under court supervision," *Payden v. United States*, 767 F.2d 26, 29 (2d Cir.1985) (citation omitted), to ensure that the grand jury is not misused as a device for trial preparation. There is no similar limit on MLAT procedures such that they are limited to pre-indictment proceedings, and indeed the MLAT is designed to provide a procedure for securing assistance in connection with "investigations or court proceedings." MLAT art. 1(1)(a).

Even if the grand jury strictures did apply, however, the Assistant United States Attorney responsible for this case has sworn that the interviews were not conducted for the sole or dominant purpose of trial preparation. (Coleman Aff. ¶ 6.) Rather, the Government represents that there is an ongoing grand jury investigation of additional crimes other than those charged in the pending indictment and those allegations involve the defendants in this case and others.[3] The defense, which carries the burden of showing the impropriety of a grand jury subpoena, argues that since the Government admits that it began investigating the case in 1999 (Coleman Aff.

¶ 2), the Government surely could have completed its investigation before indictment if it wished to do so. However, the credible statements of the OIA attorney indicate that in fact the Government requested the interviews in question about twenty months before the indictment in this case, and the interviews were finally scheduled and conducted about two months after the indictment was returned. The fact that the defendants were indicted before the interviews were conducted does not indicate that the Government acted in bad faith in requesting the interviews or negate the Government's representations concerning the need for the interviews in connection with ongoing investigations.

■ The letter and spirit of Rule 15 also do not require the relief that Blech seeks. The witness in a Rule 15 deposition testifies under oath, in response to compulsory process, and the witness's responses are recorded verbatim. In contrast, the interviews at issue here are summarized, not recorded, and conducted by non-parties; the witness is unsworn; and the level of compulsion involved in the Swiss request to appear is less than that attaching to an American subpoena. Furthermore, Rule 15 depositions are designed to preserve testimony specifically for admission at trial, and are only used if a "witness' testimony is material to the case and if the witness is unavailable to appear at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir.1984). Detailed provisions govern the use of such depositions at trial. *See* Fed.R.Crim.P. 15(e). Here, the Government has indicated that it has "no intention of offering the statements in its case-in-chief," (Gov't Mem. at 14), and the parties have suggested no basis for the admission of such statements as substantive evidence in the Government's case. Therefore, Rule 15's procedural safeguards are unnecessary.

In addition, while the defense is free to speak to any witnesses it chooses without notifying the Government or the Swiss au-

---

2. *See* MLAT art. 12(2) (indicating that the state requesting assistance may also ask that the requested state allow the presence of the defendant and/or his counsel at the execution of the request).

3. The Government's *ex parte* submission supports the Government's representations, but the Court does not rely on it in deciding this motion. *See Ex parte* Coleman Aff. ¶¶ 5–6.

thorities, it appears that both the United States and Switzerland regard an MLAT request as the only permissible method for the Government to interview witnesses in Switzerland, even if the witnesses are willing to speak with United States authorities. (Friedman Aff. at 4–5.) It is thus not unfair to allow the Government to use the MLAT procedure, any more than it is unfair to allow the Government to use Federal Bureau of Investigation agents to interview witnesses in this country.

The defendant's right to fair proceedings is protected by other principles. To the extent that the Government discovers any exculpatory evidence, it is required to make timely disclosure to the defense. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To the extent that the Government obtains impeachment material, it will be required to produce that material to the defense at an appropriate time. *See* 18 U.S.C. § 3500; *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Coppa,* 267 F.3d 132 (2d Cir.2001). The defense has failed to show the need or basis for any further measures.

█ Finally, the defendant asserts that he is entitled to some relief because the Government did not contact directly the Swiss magistrate scheduled to conduct the interviews to ask that the interviews be postponed. However, the Government acted appropriately in proceeding through the authority designated in the MLAT. *See* MLAT art. 28(1) ("Requests for assistance shall be handled by a Central Authority.... For Switzerland, the Central Authority shall be the Division of Police of the Federal Department of Justice and Police in Bern."). It was not in any way wrong for the Government to avoid direct contact with the Swiss magistrate who was to conduct the interviews.

### Conclusion

The defendant's motion is denied in its entirety.

**SO ORDERED.**

